**No. 2:21-CV-03402-KSM**

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

**Novartis Pharmaceuticals Corporation,** *Appellee*

**v.**

**Adenekan Ola-Oluwa Adesanya, and Afoluso Aderonke Adesanya,**
*Appellants*

---

Appeal from the Order and Opinion of the Honorable Ashely M. Chan of the
United States Bankruptcy Court for the Eastern District of Pennsylvania
Entered July 14, 2021 in Adversary Proceeding 19-00124-AMC of
Bankruptcy Case 18-17260-AMC

---

**BRIEF OF APPELLEE,
NOVARTIS PHARMACEUTICALS CORPORATION**

---

Counsel for Appellees:

Stephen M. Hladik
Attorney ID No. 66287
Pamela Cunningham
Attorney ID No. 312388
Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454
(215) 855-9521
shladik@hoflawgroup.com
pcunningham@hoflawgroup.com

## DISCLOSURE STATEMENT

As required by Fed. R. Bankr. P. 8012 and L.B.R. 8012-1, Novartis Pharmaceuticals Corporation makes the following disclosure:

(1) The nongovernmental corporate party, Novartis Pharmaceuticals Corporation, in the above listed appeal has the following parent corporation(s): Novartis Pharmaceuticals Corporation is an indirect, wholly owned subsidiary of Novartis AG.  Novartis AG ordinary shares trade on the SIX Swiss Exchange under the symbol NOVN and its American Depository Shares trade on the New York Stock Exchange under the ticker symbol NVS.

Date: November 24, 2021                    */s/ Pamela Cunningham*
                                           Pamela Cunningham, Esquire
                                           *Attorney for Novartis*
                                           *Pharmaceuticals Corporation*

# **Table of Contents**

**Table of Authorities**………………………………………………………i

**Jurisdictional Statement** ……………………………………………………1

**Statement of Issues with Applicable Standard of Review**…………………......2

    I.     Overview of the District Court's Standard of Review
           for a Bankruptcy Appeal………………….…………………………2

    II.    Statement of Issues………………………….……………………4

    III.   There are no previous appeals or appeals currently
           pending in the district court of court of appeals which
           arose from Appellants' bankruptcy case………..…………………11

    IV.   This matter has not previously been before the district
           court or the court of appeals……………………….…………………11

    V.    Novartis is not aware of any other pending judicial
           proceeding in a federal or state court that present issues,
           which if decided, may be relevant to the issues
           presented by the Appellants' appeal………………….…………………11

**Statement of the Case**…………………………………………………………12

    I.     The District Court Case……………………………………………...12

    II.    Procedural History of the Bankruptcy Case and the
           Adversary Proceeding……………………………………………..13

    III.   Statement of the Facts…………………………………….…17

**Summary of Argument**…………………………………………………..20

**Argument**………………………………………………………23

I.      Upon the conversion of the Appellants' bankruptcy case from a Chapter 13 to a Chapter 7, a new deadline for filing a complaint objecting to discharge was properly provided, in accordance with Federal Rule of Bankruptcy Procedure 1019(2)(A)……………………………………………………………23

II.     The Bankruptcy Court merely clarifying in its March 24, 2020 Opinion that a denial of parts of Novartis' Motion for Summary Judgment would not prevent Novartis from seeking leave amend its complaint, is not providing unsolicited legal advice to Novartis' counsel……………………………25

III.    As both Appellants' proposed counterclaims and affirmative defenses were completely irrelevant to the issue of dischargeability and were attempts to yet again relitigate the District Court action, the Bankruptcy Court rightly denied Appellants' Motion for Leave of Court to File Counterclaims as moot and granted Novartis' Motion to Strike Appellants' Affirmative Defenses……………………………..26

IV.     The Court did not err in finding Ms. Burley and her testimony credible and admitting Novartis' Exhibit 83 into evidence………………………………………………………………29

V.      The Bankruptcy Court did not err in applying, at trial, the doctrine of collateral estoppel to the findings of fact and conclusions of law of the District Court, as the evidence Novartis introduced at trial was for the purposes of proving Afoluso's intent or illustrating her lack of credibility…………………………………………………………..35

VI.     The Bankruptcy Court correctly held that the portion of the District Court judgment attributable to Afoluso's fraud on her employment application and resume is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B)………………...37

VII.    The Bankruptcy Court did not err in holding the portion of the District Court judgment attributable to Afoluso's breach of the relocation agreement nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), as Appellants failed to offer any credible evidence that Afoluso intended to relocate……………………………………………………………….39

VIII.   The Bankruptcy Court did not err in holding the portion of the District Court judgment attributable to Afoluso's breach of her duty of loyalty and conflicts policy nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), as the Bankruptcy's Court's findings of fact are not clearly erroneous…………………………………………………………..44

IX.     The Bankruptcy Court did not err in holding the majority of the District Court judgment attributable to Afoluso's breach of the Annual Incentive Program nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), as the Bankruptcy's Court's findings of fact are not clearly erroneous…………………………51

X.      The Bankruptcy Court did not err in holding the judgment attributable to the sanctions against Afoluso nondischargeable pursuant to 11 U.S.C. § 523(a)(6), since Afoluso acted willfully and maliciously when she committed perjury and submitted false discovery responses…………………………………………………………..51

XI.     The Bankruptcy Court did not err in holding the judgment attributable to the sanctions against Adenekan nondischargeable pursuant to 11 U.S.C. § 523(a)(6), as Adenekan acted willfully and maliciously when he refused to produce documents and lied during his deposition……………………53

XII.    The Bankruptcy Court properly denied Appellants' Motion to Stay Order of July 14, 2021 and to continue adversary case 19-124 and bankruptcy case 18-17260 ("Motion to Stay") as they failed to meet the standard required for a stay……………………………………………………..55

XIII.  The United States District Court for the Eastern District of
        Pennsylvania cannot overturn the orders and opinions of
        the District Court case……………………………………………...58

**Conclusion**………………………………………………………………………..60

**Certificate of Compliance**………………..…………………………....……i

# Table of Authorities

## Cases

Bayer v. Bayer, 558 B.R. 722, 730 (E.D. Pa 2016)……………………………… 3, 38

Bullard v. Blue Hills Bank, 575 U.S. 496, 501 (U.S. 2015)……………………….. 1

Carto v. Oakley (In re Oakley), 530 B.R. 251, 261 (E.D. Pa. 2015)…………...…… 2

DiFederico v. Rolm Co., 201 F.3d 200, 208 (3d Cir. 2000)…………………...…... 3

DIRECTV Inc. v. Seijas, 508 F.3d 123, 125 n.1 (3d Cir. 2007)………..…………. 33

Fellheimer, Eichen & Braverman, P.C. v Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir. 1995)……………………………………...…… 3

First Western SBLC, Inc. v. Mac-Tav, Inc., 231 B.R. 878, 881 (D.N.J. 1999)…………………………………………………………………..… 3

Garza v. Citigroup Inc., 881 F.3d 277, 284 (3d Cir 2018)………………………. 39

In re Asbestos Prods. Liab. Litig, 873 F.3d 232, 237 (3d Cir. 2017)……………………………………………………...………… 33-34, 52

In re Brown, 951 F.2d 564, 567 (3d Cir. 1991)…………………………..……….. 2

In re Candor Diamond Corp., 26 B.R. 844, 846-47 (Bankr. S.D.N.Y. 1983)……………………...…………………….……...… 28, 30, 32-33

In re CellNet Data Systems, Inc., 327 F.3d 242, 244 (3d Cir. 2003)……………………………………………………………………… 2

In re Mazzocone, 1995 U.S. Dist. LEXIS 3218, at *9 (E.D. Pa. March 16, 1995)……………………………………….………..… 32, 34

In re Moisuc, 2017 U.S. Dist. LEXIS 94023, at *27 (E.D. Pa. June 19, 2017)…………………………………………………..…… 27-28, 33

In re Myers, 491 F.3d 120, 126 (3d Cir. 2007)…………………………………… 3

In re Neshaminy Office Bldg. Associates, 62 B.R. 798, 802
(E.D. Pa. 1986)……………………………………..…………… 28, 30, 32-33

In re Norley, 2002 Bankr. LEXIS 743, at * 2 (E.D. Pa. Bk. June
24, 2002)…………………………………………………………….... 57

In re SB Properties, Inc., 185 B.R. 198, 203 (E.D. Pa. 1995)………..………….. 3

In re Tribune Media Co., 902 F.3d 384, 397 (3d Cir. 2018)………………….... 33

In re United Healthcare System, Inc., 396 F.3d 247, 249 (3d
Cir. 2005)……………………………………………………………….…… 2

In re Wurster, 1999 U.S. Dist. LEXIS 12218, at *9 (E.D. Pa.
Aug. 10, 1999)…………………………………………………………...….. 36

Kool v. Coffey, 300 F.3d 340, 353 (3d Cir. 2002)…………………..…….. 3, 29, 38

McCray v. Fidelity Nat'l Title Ins. Co., 682 F3.d 229, 241 (3d
Cir. 2012)……………………………………………………………….... 33-34, 52

Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d
635, 642 (3d Cir. 1991)……………………………………………….……… 2

Mitchell v Cellone, 389 F.3d 86, 92 (3d Cir. 2004)…………….…………..….36

Mugno v. Casale, 1997 U.S. Dist. LEXIS 3867, at *10 (E.D.
Pa. March 28, 1997)……………………………………………………….. 1

NWL Holdings, Inc. v. Eden Center, Inc. (In re Ames Dep't
Stores, Inc.), 320 B.R. 518, 521-522 (Bankr. S.D.N.Y.
2005)……………………………………………………………… 27-28, 33

Olick v. Kearney (In re Olick), 466 B.R. 680, 689 (E.D. Pa
2011)……………………………………………………………………… 2

Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 586
(U.S. 2020)……………………………………………………………….... 1

<u>Salzano v. Forman</u>, 2009 U.S. Dist. LEXIS 59867 at *9-*10 (D. N.J. July 14, 2009)……………………………………………...………. 4

<u>Schroeder v. Acceleration Life Ins. Co.</u>, 972 F.2d 41, 45 (3d Cir. 1992)……………………………………………………....... 36

<u>Shell Petroleum, Inc. v. United States</u>, 182 F.3d 212, 218 (3d Cir. 1999)…………………………………………………… 39

<u>South Canaan Cellular Invs., LLC v. Lackawaxen Telecom, Inc.</u>
<u>(In re South Canaan Cellular Invs., LLC)</u>, 2010 U.S. Dist. LEXIS 85420, at *10-11 (E.D. Pa. Aug. 18, 2010)……………..…………… 3, 4

<u>Travitz v. Northeast Dep't ILGWU Health & Welfare Fund</u>, 13 F.3d 704, 711 (3d Cir. 1994)……………………………..………….. 36

**Statutes**

*Federal*

11 U.S.C. § 523(a)(2)(A)………………………………..…… 7, 8, 39, 44, 51

11 U.S.C. § 523(a)(2)(B)……………………………...……………..…… 7, 37

11 U.S.C. § 523(a)(6)…………………………………………… 9, 51, 53

15 U.S.C. § 1692a(5)……………………………………………... 26

28 U.S.C. § 157(b)(2)(A) ………………………………………….. 1

28 U.S.C. § 157(b)(2)(I)………………………………………….. 1

28 U.S.C. § 158(a)(1)………………………………………...……….. 1

*State*

42 Pa. C.S.A. § 4303(a)………………………………………….. 28-28

73 P.S. § 2270.3……………………………………..………………..…… 28-29

**Rules**

*Bankruptcy*

Fed. R. Bankr. 1019(2)(A)……………………………………………………... 20, 23, 24

Fed. R. Bankr. 4007(c)…………………………………………………...….. 23

Fed. R. Bankr. 7015…………………………………………………....….. 25

Fed. R. Bankr. 8007(b)(1) ………………………………………………..…. 56

Fed. R. Bankr. 8007(b)(2)…………………………………………………... 56

Fed. R. Bankr. 9023………………………………………………………… 57

*Local Bankruptcy*

Local E.D. Pa. Bankr. 9014-3(k)………………………….….…………….... 56

*Civil*

Fed. R. Civ. P. 9(c)…………………………………………………………… 27

Fed. R. Civ. P. 15……………………………………………………………… 25

Fed. R. of Civ. P. 59(e)……………………………………………………… 57

*Local Civil*

Local E.D. Pa. Rule 7.1(c)…………………………….….……………….….. 56

**Advisory Committee Notes**

Notes of the Advisory Committee on the 2008 Amendments for
Fed. R. Bankr. 1019(2)(A) ………………………………………………….. 24

## JURISDICTIONAL STATEMENT

The United States Bankruptcy Court of the Eastern District of Pennsylvania (the "Bankruptcy Court") had subject-matter jurisdiction over the adversary proceeding as it was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I).   The United States District Court of the Eastern District of Pennsylvania has jurisdiction to hear an appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).   The order entered on July 14, 2021, in the adversary proceeding holding the majority of Appellants' debts nondischargeable is a final order as "[o]rders in bankruptcy cases qualify as "final" when they definitively dispose of discrete disputes within the overarching bankruptcy case." Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 586 (U.S. 2020); (citing Bullard v. Blue Hills Bank, 575 U.S. 496, 501 (U.S. 2015)) (*See also*, Mugno v. Casale, 1997 U.S. Dist. LEXIS 3867, at *10 (E.D. Pa. March 28, 1997) ("Any order within a bankruptcy case that concludes an individual adversary proceeding is final and reviewable.")).   Appellants' timely filed their notice of appeal on July 28, 2021.

1

## STATEMENT OF THE ISSUES WITH
## APPLICABLE STANDARD OF REVIEW

I.   Overview of the District Court's Standard of Review for a Bankruptcy
     Appeal

"The reviewing court -- be it a district court or a circuit court of appeals –

reviews the bankruptcy court's legal determinations de novo, its factual findings

for clear error, and its exercise of discretion for abuse thereof."  Carto v. Oakley

(In re Oakley), 530 B.R. 251, 261 (E.D. Pa. 2015); (internal quotations omitted);

(quoting In re United Healthcare System, Inc., 396 F.3d 247, 249 (3d Cir. 2005)).

> In other words, the reviewing court accepts the trial
> court's finding of historical or narrative facts unless
> clearly erroneous, but exercise plenary review of the trial
> court's choice and interpretation of legal precepts and its
> application of those precepts to the historical facts.
> Id. (internal quotations omitted); (quoting Mellon Bank,
> N.A. v. Metro Communications, Inc., 945 F.2d 635, 642
> (3d Cir. 1991)).

"Mixed questions of fact and law require a mixed standard of review, under which

the court divides the questions into their respective components and applies the

appropriate standard to each.  Olick v. Kearney (In re Olick), 466 B.R. 680, 689

(E.D. Pa 2011); (citing In re Brown, 951 F.2d 564, 567 (3d Cir. 1991)).

"A factual finding is clearly erroneous when the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been

committed."  Carto, 530 B.R. at 261; (internal quotations omitted); (quoting In re

CellNet Data Systems, Inc., 327 F.3d 242, 244 (3d Cir. 2003)).

2

> Also, when applying the clearly erroneous standard it is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. Bayer v. Bayer, 558 B.R. 722, 730 (E.D. Pa 2016); (citing DiFederico v. Rolm Co., 201 F.3d 200, 208 (3d Cir. 2000)).

"Thus, the fact that a reviewing court would have decided the matter differently does not render a finding of fact clearly erroneous." Id. (citing First Western SBLC, Inc. v. Mac-Tav, Inc., 231 B.R. 878, 881 (D.N.J. 1999). "Furthermore, in reviewing the bankruptcy court's factual findings we are to give due regard to the opportunity of that court to judge first-hand the credibility of witnesses." Kool v. Coffey, 300 F.3d 340, 353 (3d Cir. 2002); (citing Fellheimer, Eichen & Braverman, P.C. v Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir. 1995)). "The Bankruptcy Court is best positioned to assess the facts, particularly those related to credibility and purpose." In re Myers, 491 F.3d 120, 126 (3d Cir. 2007). "It is the appellant's burden to demonstrate why the Bankruptcy Court's findings of fact are clearly erroneous." South Canaan Cellular Invs., LLC v. Lackawaxen Telecom, Inc. (In re South Canaan Cellular Invs., LLC), 2010 U.S. Dist. LEXIS 85420, at *10-11 (E.D. Pa. Aug. 18, 2010); (citing In re SB Properties, Inc., 185 B.R. 198, 203 (E.D. Pa. 1995)).

"[W]here the Bankruptcy Court has had cause to exercise its discretion, those exercises are reviewed for abuse thereof, meaning that the determination was "'arbitrary, irrational, or contrary to law.'"  Id. (quoting Salzano v. Forman, 2009 U.S. Dist. LEXIS 59867 at *9-*10 (D. N.J. July 14, 2009)).

II.    Statement of Issues

1.    Whether the Bankruptcy Court properly reset the date to file an objection to discharge when Appellants' Chapter 13 bankruptcy was converted to a Chapter 7 bankruptcy?

Standard of Review: De novo.

Appellants failed to object or raise this issue prior to this appeal.

2.    Whether the Bankruptcy Court acted properly by not issuing a Rule to Show Cause or dismissing Novartis Pharmaceuticals Corporation's ("Novartis") initial or amended Complaint to Determine Non-Dischargeability as time-barred?

Standard of Review: De novo.

Appellants failed to object or raise this issue prior to this appeal.

3.    Whether the bankruptcy court was permitted in its Opinion of March 24, 2020, to clarify that Novartis may file a motion for leave to amend its complaint?

Standard of Review: Abuse of discretion

Appellants never objected to or raised this issue prior to this appeal.

4.      Whether the Bankruptcy Court properly denied as moot Appellant's counterclaims and struck Appellants' affirmative defenses, since both the counterclaims and affirmative defenses were irrelevant to the issue of dischargeability and were improper attempts to relitigate the United States District Court of the District of New Jersey (the "District Court") case at docket number 2:13-cv-05564-SDW-SCM (the "District Court Case")?

Standard of Review: De novo.

Appellants raised their counterclaims[1] on May 15, 2020 via a Motion for Leave of Court to File Counterclaims[2].  (Appellant App., Vol.2, Ex. 7)[3]. Novartis filed its opposition to the Motion on June 3, 2020.  (Novartis App., Ex. 1).  On June 17, 2020, the Motion was denied as moot.  (Appellant App., Vol.1, A2, ECF#85). Appellants filed their opposition to the Motion to Strike on July 8 and 24, 2020.

---

[1] Appellants, on February 27, 2020, in their Response to Novartis' Motion to Reschedule Hearing improperly sought leave to assert counterclaims.  On March 10, 2020, Appellants wrote a letter to the court stating they wanted to raise new issues at the hearing on the motion for summary judgment, which were totally unrelated to the motion for summary judgment.  Then on May 5, 2020 Appellants filed a "Supplemental Motion" to "follow up" on the February 27, 2020 Response to Novartis' Motion to Reschedule Hearing and the March 10, 2020 letter.

[2] Appellants included counterclaims in their answer to Novartis' initial complaint, which are not part of this appeal. Those counterclaims were dismissed with prejudice on August 14, 2019.  (Appellants App., Vol.1, A2, ECF#11).

[3] Since the Appellants did not paginate their appendix, Novartis' reference to documents within Appellants' appendix is to the Volume and Exhibit number as labeled in Appellants' Appendix along with the page number of the specific document, when available.

(Id. at ECF#90 & 96).  The Bankruptcy Court struck all of Appellants' affirmative defenses on July 29, 2020.  (Id. at ECF#101).

5.      Whether the Bankruptcy Court correctly accepted the testimony of Novartis' witness, Megan Burley ("Ms. Burley"), and admitted Novartis Trial Exhibit 83 ("Exhibit 83"), as Ms. Burley was a credible witness who authenticated Exhibit 83?

Standard of Review:  De novo for whether Exhibit 83 should have been admitted. Clearly erroneous for all other issues.

Appellants objected to the admission of Exhibit 83 at trial, which was overruled, and in their post-trial brief.  (Appellants App., Vol.1, H 52:4-53:13; 205:20-207:13 & Vol.2, Ex. 3, p.2-12).

6.      Whether the Bankruptcy Court properly applied, at trial, the doctrine of collateral estoppel to the findings of fact and conclusions of law of the District Court, since the evidence Novartis introduced at trial was for the purposes of proving Afoluso's intent or illustrating her lack of credibility?

Standard of Review: De novo.

Appellants raised this issue at trial. (Appellants App., Vol.1, H p.102:22-103:14; 111:22-112:22; 118:25-120:8; 167:8-172:20).

7.      Whether the Bankruptcy Court erred in rejecting Novartis' post-trial declaration?

Standard of Review:  De novo.

As Appellants appear to agree that the Bankruptcy Court was correct in rejecting Novartis' post-trial declaration, there appears to be no issue.  It is unclear why Appellants raised this issue.  Appellants never raised this issue prior to appeal.

8.     Whether the Bankruptcy Court correctly held the portion of the District Court judgment attributable to Afoluso Adesanya's ("Afoluso") fraud on her employment application and resume nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B), since Novartis reasonably relied on Afoluso's misrepresentations when deciding to offer her employment?

Standard of review: Clearly erroneous.

Appellants raised the issue in their post-trial brief and to the extent that Afoluso's statement at trial that she allowed Novartis to contact her current employer on the job application could be considering raising this issue, it was raised at trial. (Appellants App., Vol.2, Ex. 3, p.16, section d & Vol 1, Ex. H, p.137:6-14).

9.     Whether the Bankruptcy Court properly held the portion of the District Court judgment attributable to Afoluso's breach of the relocation agreement nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), as Appellants failed to offer any credible evidence that Afoluso intended to relocate?

Standard of review: Clearly erroneous.

Appellants failed to raise these specific issues prior to this appeal.

10.     Whether the Bankruptcy Court properly held the portion of the District Court judgment attributable to Afoluso's breach of the duty of loyalty and conflicts policy nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), since Novartis introduced credible, relevant, and admissible evidence that Afoluso knew she created a misleading impression intending to deceive when she failed to disclose her external employment?

Standard of review: Clearly erroneous as Appellants appear to only challenge findings of fact.  To the extent Appellants challenge the admission of Exhibit 83, de novo.

Appellants raise some of these issues in their post-trial brief.  (Appellants App., Vol.2, Ex. 3, p.2-12, 21-24).  Appellants objected to the admission of Exhibit 83 at trial and their objection was overruled at trial.  (Appellants App., Vol.1, Ex. H, p.52:4-53:13; 205:20-207:13).  As Appellants' arguments in their post-trial brief were incomprehensible, the Bankruptcy Court overruled their request to strike Exhibit 83.  (Appellants App., Vol.1, Ex. C, p.31, n.20).

11.     Whether the Bankruptcy Court correctly held the portion of the District Court judgment attributable to Afoluso's breach of the annual incentive program ("AIP") nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), since Novartis introduced credible, relevant, and admissible evidence that Afoluso knew

she created a misleading impression to deceive Novartis that she was eligible for AIP?

Standard of review: De novo for the admissibility of Exhibit 83 and clearly erroneous for all findings of fact.

Appellants objected to the admission of Exhibit 83 at trial and in their post-trial brief and their objection was overruled at trial.  (Appellants App., Vol.1, H, p.52:4-53:13; 205:20-207:13 and Vol.2, Ex. 3, p.2-12).   As Appellants' arguments in their post-trial brief were incomprehensible, the Bankruptcy Court overruled Appellants request to strike Ex. 83.  (Appellants App., Vol.1, Ex. C, p.31, n 20).

12.    Whether the Bankruptcy Court correctly held the portion of the District Court judgment attributable to the sanctions award against Afoluso nondischargeable pursuant to 11 U.S.C. § 523(a)(6), since the District Court found Afoluso acted willfully and maliciously when she committed perjury and provided false discovery responses?

Standard of review: Clearly erroneous.

Appellants raised the sanctions award in their post-trial brief.  (Appellants App., Vol.2, Ex. 3, p.26-27).

13.    Whether the Bankruptcy Court correctly held the portion of the District Court judgment attributable to the sanctions award against Adenekan nondischargeable pursuant to 11 U.S.C. § 523(a)(6), since the District Court found

Adenekan acted willfully and maliciously when he refused to produce documents and lied during his deposition?

Standard of review: Clearly erroneous.

Appellants raised the sanctions award in their post-trial brief.  (Id.).

14.     Whether the Bankruptcy Court properly denied Appellants' Motion to Stay, as Appellants failed to meet the standard for the grant of a stay?

Standard of review: De novo.

Appellants raised this issue in their Motion to Stay.  The Motion to Stay was denied on September 15, 2021.  (Appellants App., Vol 1, A2, ECF#187).

15.     Whether Appellants improperly seek to overturn the District Court case, which was already affirmed on appeal?[4]

Standard of review: Not applicable.  The District Court case has been affirmed on appeal and cannot now be overturned on an appeal from Appellants' Bankruptcy Court case.

Ex parte communications and editorial review of orders in the District Court case were previously raised in Appellants' appeals of the District Court case.  Other issues Appellants failed to raise in their prior appeals of the District Court case and prior to this appeal.

---

[4] Appellants did not include this issue within the "statement of issues" portion of their brief but introduced this topic within the argument section.

III.    There are no previous appeals or appeals currently pending in the district court or court of appeals which arose from Appellants' bankruptcy case.

IV.    This matter has not previously been before the district court or court of appeals.

V.    Novartis is not aware of any other pending judicial proceedings in a federal or state court that present issues, which if decided, may be relevant to the issues presented by the Appellants' appeal.

## STATEMENT OF THE CASE

I.      The District Court Case.

The adversary proceeding from which this appeal is based, arises from judgments entered in the District Court case against Afoluso for $1,850,958.45 and against Adenekan Adesanya ("Adenekan" and collectively with Afoluso "the Adesanyas") for $23,714.00.  (Appellant App., Vol.1, G1 & G2).

Appellants appealed the District Court's decision to the United States Court of Appeals for the Third Circuit (the "Third Circuit") on June 22, 2017.  (Novartis App., Ex. 26).  The Third Circuit affirmed the District Court's decision.  (Novartis App., Ex. 27).  Appellants then sought review by the United States Supreme Court (the "Supreme Court") on February 12, 2018 by filing a Petition for Writ of Certiorari.  (Novartis App., Ex. 28).  The Supreme Court denied the Petition on April 15, 2019.  (Id.).  As such, the decisions of the District Court and Third Circuit are final and the findings of fact and conclusions of law of the District Court are conclusive.

Novartis formally moved the District Court judgments from New Jersey and lodged them in the Montgomery County Court of Common Pleas (the "Montgomery County Court") as foreign judgments.  (Novartis App., Ex. 29).  Appellants filed a Petition to Strike the Foreign Judgment (the "Petition to Strike") on November 6, 2017.  (Id. at p.748).  When Appellants' Petition to Strike was

denied, Appellants appealed to the Pennsylvania Superior Court, which affirmed the Montgomery County Court's decision.  (Novartis App., Ex. 30).  Appellants then filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was denied.  (Novartis App., Ex. 31).

II.   <u>Procedural History of the Bankruptcy Case and the Adversary Proceeding.</u>

To avoid paying the judgments, Appellants commenced a Chapter 13 bankruptcy on November 2, 2018.  (Appellant App., Vol.1, A1, ECF#1).  A 341(a) meeting was initially scheduled for January 23, 2019, and the deadline to object to the dischargeability of debts was March 24, 2019.  (<u>Id</u>. at ECF#21).  The meeting of creditors was subsequently continued to February 25, 2019 and then to March 20, 2019.  (<u>Id</u>. at ECF#23 & 33).  Before the meeting of creditors was held, Appellants' Chapter 13 bankruptcy was converted to a Chapter 7 on February 26, 2019.  (<u>Id</u>. at ECF#34).  Upon the conversion from a Chapter 13 to a Chapter 7, a new trustee was appointed to administer the case, and a new deadline to object to the dischargeability of debts was set for June 8, 2019, 60 days after the new meeting of the creditors on April 9, 2019.  (<u>Id</u>. at ECF#37).  Novartis timely filed its initial Complaint to Determine Non-Dischargeability (the "Initial Complaint") on June 7, 2019.  (Appellant App., Vol.1, B1).

Appellants filed an Answer to the Complaint with Affirmative Defenses and Counterclaims on July 8, 2019.  (Appellant App., Vol.1, B2).  In response, Novartis, on July 22, 2019, filed a Motion to Dismiss the Counterclaims. (Appellant App., Vol.1, A2, ECF#7).  On August 14, 2019, the Bankruptcy Court entered an Order granting Novartis' Motion to Dismiss the Counterclaims, with prejudice.  (Id. at ECF#11).

On December 12, 2019, Novartis filed its Motion for Summary Judgment with supporting Brief.  (Id. at ECF#20).  On January 22, 2020, after receiving an extension of time, Appellants filed an "Accompanying Brief in Opposition to Novartis Summary Judgment Motion, a Cross Motion by Defendants and in Support of Motion to Avoid Judicial Lien" and a "Certification in Support of Opposition to Novartis Summary Judgment Motion, Cross Motion and Motion to Avoid Novartis Judicial Lien".   (Id. at ECF#29 & 30).  On February 20, 2020, Novartis filed a Response in Opposition to Appellants' Cross-Motion for Summary Judgment and a Response in Opposition to Appellants' Motion to Avoid Judicial Lien.  (Id. at ECF#35).  Appellants then filed, on February 24, 2020, a Sur Reply to Novartis' Opposition to Appellants' Cross Motion for Summary Judgment and Motion to Avoid Lien.  (Id. at ECF#39).  On March 24, 2020, the Bankruptcy Court entered an Order granting in part and denying in part Novartis' Motion for

Summary Judgment and declaring Novartis retains the ability to attempt to amend its complaint.  (Appellant App., Vol.1, E).

On April 23, 2020, Novartis filed a Motion for Leave to file Amended Complaint.  (Appellant App., Vol.1, A2, ECF#62).  On May 5, 2020, Appellants filed a "Response to Novartis' Motion for Leave to file Amended Complaint".  (Id. at ECF#65).  On May 13, 2020, the Bankruptcy Court granted Novartis's Motion for Leave to File an Amended Complaint.  (Id. at ECF#70).  On May 15, 2020, Novartis filed its Amended Complaint to Determine Non-Dischargeability (the "Amended Complaint").  (Appellant App., Vol.1, B2).  Appellants then filed an Answer with Affirmative Defenses on May 29, 2020.   (Id.).  Novartis filed a Motion to Strike the Affirmative Defenses on June 19, 2020.  (Novartis App., Ex. 2).  Appellants filed a response on July 8, 2020.  (Novartis App., Ex. 3).  On July 14, 2020, Novartis filed a Brief in Support of its Motion to Strike the Affirmative Defenses.  (Novartis App., Ex. 4).  On July 24, 2020, Appellants filed a response to Novartis' Brief in Support of its Motion to Strike the Affirmative Defenses.  (Novartis App., Ex. 5).  On July 29, 2020, the Bankruptcy Court granted Novartis' Motion to Strike.  (Appellants App., Vol.1, A2, ECF#101).

On July 9, 2020, Appellants had filed a Motion to Compel.  (Id. at ECF#88).  Novartis filed its Response in Opposition on July 22, 2020.  (Novartis App., Ex. 6).  At the hearing on the Motion to Compel, Appellants voluntarily withdrew their

Motion to Compel, when both parties agreed not to file another Motion for Summary Judgment since the Court stated it believed the element of "intent" would need to be proven through evidence at trial.   (Appellant App., Vol.1, A2, ECF#100).

On September 25, 2020, Novartis filed three different *Motions in Limine* to preclude evidence and testimony: (1) that relitigates the District Court case; (2) is beyond the scope of the Bankruptcy Court's Motion for Summary Judgment Order; and (3) is related to Appellants' previously dismissed counterclaims and affirmative defenses.  (Id. at ECF#113-115).   The Bankruptcy Court granted all of Novartis' *Motions in Limine* on November 4, 2020.  (Id. at ECF#123-125).   The parties filed a Joint Pre-Trial Statement on September 25, 2020.  (Novartis App., Ex. 7).

Due to the COVID-19 pandemic, the Bankruptcy Court held the trial over Zoom on January 14, 2021.  (Appellant App., Vol.1, A2, ECF#152).   At the Bankruptcy Court's request, Novartis submitted declarations on January 21, 2021, attaching the Codes of Conduct, and on January 25, 2021 attaching Global Drug Safety & Surveillance, Inc.'s ("Global Drug") tax returns.  (Appellant App., Vol.1, A2, ECF#153 & 154 & Vol.2, A2, Ex. 4).  Appellants submitted a declaration on February 3, 2021, at the Bankruptcy Court's request.  (Appellant App., Vol.1, A2,

ECF#157).   After the trial, each party submitted post-trial briefs.  (Id. at Ex. 3 & Novartis App., Ex. 8).

III.   Statement of the Facts

Many facts necessary to establish the nondischargeability of Appellants' judgments were already established in the District Court case, which the Appellants were prohibited from relitigating due to the doctrine of collateral estoppel.  These facts are already part of the record on appeal, as Novartis' Exhibit 4 at trial, and have been reiterated in both the Bankruptcy Court's Summary Judgment Opinion and Trial Opinion.  Accordingly, Novartis respectfully refers the Court to the District Court opinion.  (See, Appellants App., Vol.1, G1 for the District Court's findings of fact and conclusions of law).

During trial, Afoluso remembered almost nothing from her time at Novartis (Appellants App., Vol.1, Ex. H, p.64:25-67:12; 68:8-13 &18-22; 74: 2-7 & 17-21; 75:22-76:9; 76:19-25; 77:1-79:23; 84:18-19; 93:24-94:5:, 97:20-98:4; 110:12-15; 113:20-24; 114:17-115:22; 116:22-25; 123:5-124:8; 129:11-130:16; 166:3-12; 171:18-172:9; 180:7-13).   Additionally, she was repeatedly argumentative and evasive during questioning.  (Id. at p.91:16-92:10; 100:3-16; 106:2-14; 167:13-168:10).   Oftentimes her testimony was conflicting.  For example, Afoluso explained her understanding of Novartis' AIP, but within the same breath, she testified she was unaware of an AIP policy at Novartis. (Id. at p.158:13-159:7).

Later she testified she knew there was an AIP policy.  (Id. at p.200:25-201:2).  In addition, Afoluso gave extremely confusing and contradictory testimony regarding whether Global Drug had actually paid her $220,000.00 in salary.  (Id. at p.170:8-180:19).  Repeatedly during trial, Adenekan had to be reminded not to coach or correct Afoluso during her testimony.   (Id. at p.74:22-75:17; 124:23-125:11; 152:23-153:19).   As a result of Afoluso's actions during trial, the Bankruptcy Court found Afoluso lacked credibility and that her testimony was self-serving. (Id. at Ex. C, p.18, 32, n.21 & 37, n.24).

Novartis' witness, Ms. Burley, testified that employees would receive Exhibit 83, the Code of Conduct, when they were hired by Novartis and each year thereafter.   (Id. at Ex. H, p.24:19-25:6; 33:25-34:2).   Ms. Burley testified that Afoluso acknowledged receiving the Code of Conduct when she was hired.  (Id. at 31:3-18; Novartis App., Ex. 12).  The Acknowledgment that Afoluso signed stating she received and read the Code of Conduct also stated that the obligation to report any violations of the policy is a condition of Afoluso's employment with Novartis. (Id. at 31:19-32:2; Novartis App., Ex. 12).  Afoluso received training on the Code of Conduct multiple times. (Appellants App., Vol.1, H, 33:16-24; 124:12-125:20; Novartis App. Ex. 13).   The Code of Conduct clearly prohibits working for a competitor of Novartis, owning an interest in a competing company, or engaging in outside employment that encroaches on the time that should be devoted to

18

Novartis.  (Appellants App., Vol.1, H, 27:23-29:8 & Vol.2, Ex. 1).  The Code of Conduct also stated that employees could lose their AIP if they violated the Code of Conduct (Appellants App., Vol.1, H, 29:16-30:4; Vol.2, Ex. 1).  Additionally, Afoluso's offer letter mentioned the AIP.  (Appellants App., Vol.1, H, 40:1-11; Novartis App. Ex. 10).

## SUMMARY OF ARGUMENT

The Bankruptcy Court followed the applicable rules of procedure and evidence.  Predictably, the Adesanyas' appeal to this Court represents their last grasp at random straws as they still try to avoid paying a judgment that was justifiably entered against them based on Afoluso' intentional fraudulent conduct against Novartis and their deliberate offenses against the District Court.  Novartis responds to each of the issues they baselessly strung together in their appeal and establishes the lack of merit of each.  Respectfully, Novartis strongly urges this Court to reject the Adesanyas' groundless appeal and uphold the Bankruptcy Court's July 14, 2021 Order.  Justice demands it.

None of the assorted issues raised on appeal by Appellants have merit.  The Bankruptcy Court, pursuant to Fed. R. Bankr. 1019(2)(A), properly reset the deadline for filing a complaint objecting to discharge when Appellants' Chapter 13 bankruptcy was converted to a Chapter 7.  The Bankruptcy Court is permitted in an Opinion to clarify that a party may seek leave to amend its complaint.  Appellants' proposed counterclaims were properly deemed moot, and their affirmative defenses stricken as both were irrelevant to the issues of dischargeability and an impermissible relitigation of the District Court case.  At trial, the Bankruptcy Court admitted Novartis' Exhibit 83 into evidence as it was properly authenticated by a credible witness.  Additionally, the Bankruptcy Court correctly applied the

doctrine of collateral estoppel during trial, as the evidence Novartis introduced proved Afoluso's intent or lack of credibility.

The Bankruptcy Court correctly held the majority of Appellants' debt nondischargeable.  As Novartis reasonably relied on Afoluso's misrepresentations when deciding to offer her employment, the portion of the judgment attributable to Afoluso's fraud on her employment application and resume was nondischargeable. The portion of the District Court judgment attributable to Afoluso's breach of the relocation agreement was nondischargeable, as Appellants failed to offer any credible evidence that Afoluso intended to relocate.  Since Novartis introduced credible, relevant, and admissible evidence that Afoluso intentionally created a misleading impression to deceive when she failed to disclose her external employment, the portion of the District Court judgment attributable to Afoluso's breach of the duty of loyalty and conflicts policy was nondischargeable.  The portion of the District Court judgment attributable to Afoluso's breach of the AIP was nondischargeable, since Novartis introduced credible, relevant, and admissible evidence that Afoluso knew she created a misleading impression to deceive Novartis that she was eligible for AIP when she was not.   Since Afoluso acted willfully and maliciously when she committed perjury and provided false discovery responses and Adenekan acted willfully and maliciously when he refused to produce documents and lied during his deposition, the portion of the

District Court judgment attributable to the sanctions awards against the Adesanyas was nondischargeable.

The Bankruptcy Court properly denied Appellants' Motion to Stay, as Appellants failed to meet the standard required to grant a stay, and a case cannot be "continued".  Finally, the District Court case cannot be overturned as it has already been affirmed on appeal.  Additionally, the doctrine of collateral estoppel prevents relitigation of District Court's findings of fact and conclusions of law.

## ARGUMENT

I.   **UPON THE CONVERSION OF THE APPELLANTS'
     BANKRUPTCY CASE FROM A CHAPTER 13 TO A CHAPTER 7,
     A NEW DEADLINE FOR FILING A COMPLAINT OBJECTING
     TO DISCHARGE WAS PROPERLY PROVIDED, IN
     ACCORDANCE WITH FEDERAL RULE OF BANKRUPTCY
     PROCEDURE 1019(2)(A).**

Prior to the 341(a) meeting of the creditors, Appellants' Chapter 13

bankruptcy was converted to Chapter 7.  (Appellant App. Vol.1, A1, ECF#34).

Pursuant to Fed. R. Bankr. 1019(2)(A):

> [a] new time period for filing a motion under § 707(b) or
> (c), a claim, a complaint objecting to discharge, or a
> complaint to obtain a determination of dischargeability of
> any debt shall commence under Rules 1017, 3002, 4004
> or 4007, but a new time period shall not commence if a
> chapter 7 case had been converted to a chapter 11, 12, or
> 13 case and thereafter reconverted to a chapter 7 case and
> the time for filing a motion under § 707(b) or (c), a
> claim, a complaint objecting to discharge, or a complaint
> to obtain a determination of dischargeability of any debt,
> or any extension thereof, expired in the original chapter 7
> case.

Fed. R. Bankr. 4007(c) provides "…a complaint to determine the dischargeability

of a debt under 523(c) shall be filed no later than 60 days after the first date set for

the meeting of creditors under 341(a)."  Thus, pursuant to the Federal Rules of

Bankruptcy Procedure 1019(2)(A) and 4007(c), upon the conversion of a Chapter

13 case to a Chapter 7 case, a new deadline to file a complaint objecting to

discharge is set for no later than 60 days after the date first set for the meeting of the creditors *in the new converted Chapter 7 case*.

Upon conversion to Chapter 7, the meeting for the creditors was scheduled for April 9, 2019 and the deadline to file a complaint objecting to discharge or to determine non-dischargeability was June 8, 2019, which was 60 days after the date for the first meeting of the creditors *in the Chapter 7 case*. (Appellant App. Vol.1, A1, ECF#37). Novartis complied with the new deadline and filed its Initial Complaint on June 7, 2019. (Appellant App., Vol.1, A2, ECF#1).

Appellants are misguided when they interpret Fed. R. Bankr. 1019(2)(A) and the Notes of the Advisory Committee on 2008 Amendments, to only apply to § 707(b) or (c) motions. Fed. R. Bankr. 1019(2)(A) quite clearly states "[a] new time period for filing a motion under § 707(b) or (c), a claim, *a complaint objecting to discharge, or a complaint to obtain a determination of dischargeability* of any debt shall commence…" (emphasis added). The Notes of the Advisory Committee on 2008 Amendments simply mention that Fed. R. Bankr. 1019(2)(A) was amended in 2008 to include a new filing period for motions under § 707(b) and (c), as such motions were not previously included in the 2007 version. (*See*, Novartis App., Ex. 32). Furthermore, contrary to their statements, Appellants never included, in either their answer to Novartis' Initial Complaint or Amended Complaint, any statute of limitations claim or defense that Novartis'

Initial or Amended Complaint was somehow "time barred."  (Appellee App., Vol.1, B1 & B2).  Therefore, it would have been inapplicable for the Bankruptcy Court to dismiss Novartis' complaint as "time-barred."  Finally, the issuance of a Rule to Show Cause (the "RTSC") upon Novartis is inapplicable upon conversion of Appellants' Chapter 13 bankruptcy to Chapter 7.  No such procedure for a RTSC to issue in such a situation even exists.

## II.   THE BANKRUPTCY COURT MERELY CLARIFYING IN ITS MARCH 24, 2020 OPINION THAT A DENIAL OF PARTS OF NOVARTIS' MOTION FOR SUMMARY JUDGMENT WOULD NOT PREVENT NOVARTIS FROM SEEKING LEAVE TO AMEND ITS COMPLAINT, IS NOT PROVIDING UNSOLICITED LEGAL ADVICE TO NOVARTIS' COUNSEL.

Pursuant to Fed. R. Civ. P. 15[5], a party may amend its complaint upon the court's leave and the court should grant such leave "when justice so requires."  The Bankruptcy Court simply stating in its March 24, 2020 Opinion that Novartis may, if it chooses, seek leave to amend its complaint, is hardly providing legal advice to Novartis' counsel.  Instead, the Bankruptcy Court was merely conveying that a denial on some parts of Novartis' Motion for Summary Judgment did not prevent Novartis from seeking leave to amend its complaint.  (Appellants App., Vol.1, Ex. E).  Such a statement by the Bankruptcy Court is hardly arbitrary, irrational, or contrary to law.  Nor have Appellants cited any legal authority that a judge may not, in an opinion, state a party may seek leave to file an amended complaint.

---

[5] Fed. R. Bankr. 7015 applies Fed. R. Civ. P. 15.

Furthermore, Novartis did not "sneak" any new claims into its Motion for Summary Judgment.   Rather, Novartis filed a Motion for Leave to Amend Complaint to include new claims for dischargeability, which is the very procedure Appellants argue Novartis should have followed.

**III.    AS BOTH APPELLANTS' PROPOSED COUNTERCLAIMS AND AFFIRMATIVE DEFENSES WERE COMPLETELY IRRELEVANT TO THE ISSUE OF DISCHARGEABILITY AND WERE ATTEMPTS TO RELITIGATE THE DISTRICT COURT ACTION, THE BANKRUPTCY COURT RIGHTLY DENIED APPELLANTS' MOTION FOR LEAVE OF COURT TO FILE COUNTERCLAIMS AS MOOT AND GRANTED NOVARTIS' MOTION TO STRIKE APPELLANTS' AFFIRMATIVE DEFENSES.**

Appellants' proposed counterclaims involved various theories that Novartis' counsel purchased the District Court judgment and thus is a debt collector pursuant to the Federal Fair Debt Collections Practices Act (the "FDCPA").   (Appellant App. Vol.2, Ex. 7).   The FDCPA governs collections of "debts" involved in consumer transactions.   According to the FDCPA, "[t]he term 'debt' means any obligation or alleged obligation *of a consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the *transaction are primarily for personal, family, or household purposes*, whether or not such obligation have been reduced to judgment."   15 U.S.C. § 1692a(5), (emphasis added).   The obligation owed by Appellants to Novartis is the result of a judgment entered in the District Court pertaining to the

fraud of Afoluso and sanctions awards against the Adesanyas.  The amount owed to Novartis is in no way related to a *consumer* transaction or anything for *personal, family, or household use*.  As such, the judgment owed to Novartis is not the subject of a "debt" within the FDCPA and the FDCPA is inapplicable to Appellants.  Thus, the Bankruptcy Court correctly denied the Motion for Leave of Court to File Counterclaims as moot.

All of the proposed questions Appellants raise in this section are completely irrelevant to the issue of dischargeability the Bankruptcy Court was charged with determining.  Furthermore, Appellants' allegations are false.  Stephen Hladik, counsel for Novartis, never informed the court that he is not being paid for representing Novartis.  Nor have any of Novartis' counsel purchased the judgment. Thus, there is no debt or fees to hide or conceal.  Additionally, none of the proposed counterclaims were relevant to the actual issue of dischargeability.

Contrary to Appellants argument, a case is not "actionable" under Fed. R. Civ. P. 9(c).  Instead, Fed. R. Civ. P. 9(c), states how allegations of fraud must be pleaded.

Additionally, Exhibit 16 of Volume 2 of Appellant's Appendix is not a part of the Bankruptcy Court record, and therefore should be stricken from this appeal. "The record on appeal should contain all items considered by the bankruptcy court in reaching a decision, [c]onversely if an item was not considered by the court, it

should be stricken from the record on appeal." In re Moisuc, 2017 U.S. Dist. LEXIS 94023, at *27 (E.D. Pa. June 19, 2017); (quoting NWL Holdings, Inc. v. Eden Center, Inc. (In re Ames Dep't Stores, Inc.), 320 B.R. 518, 521-522 (Bankr. S.D.N.Y. 2005)). "Items not before the Bankruptcy Court and not considered by it in rendering its decision may not be included in the record." In re Neshaminy Office Bldg. Associates, 62 B.R. 798, 802 (E.D. Pa. 1986); (citing In re Candor Diamond Corp., 26 B.R. 844, 846-47 (Bankr. S.D.N.Y. 1983)).

Regarding Appellants' affirmative defenses, the first six were merely attempts to relitigate the District Court case. (See, Appellants App. Vol.1, B2). Accordingly, the Bankruptcy Court properly struck those defenses pursuant to the doctrine of collateral estoppel. Appellants' seventh affirmative defense of unclean hands had absolutely no connection to the adversary proceeding, bankruptcy case, or even the District Court case from which the judgment arose. Thus, the Bankruptcy Court correctly struck it. The eighth affirmative defense, yet again resolved around the absurd theory that Novartis' counsel purchased the judgment and thus violated the FDCPA, the Fair Credit Extension Uniformity Act (the "FCEUA"), and 42 Pa. C.S.A. § 4303(a). As explained above, the FDCPA is inapplicable to the judgment against Appellants, as well as being totally irrelevant to the issue of dischargeability. The FCEUA utilizes the same definition of debt as the FDCPA, thus the FCEUA is inapplicable to the judgment, and is irrelevant to

the issue of dischargeability.  73 P.S. § 2270.3.  As 42 Pa. C.S.A. § 4303(a) merely states that a judgment is also a lien on real property, there was no violation or cause of action under such a statute.  Thus, the Bankruptcy Court did not err in striking the eighth affirmative defense.

Additionally, the Bankruptcy Court did not state that the only reason it struck the affirmative defenses was due to the Court's focus on Afoluso's intent at trial.  Rather, the Bankruptcy Court explained that Appellants were unable to relitigate the District Court case and that the Court believed Afoluso's intent would need to be proven at trial, rather than in a motion for summary judgment.  Nor did the Court block discovery as Appellants allege.  Rather, the Appellants voluntarily withdrew their Motion to Compel Discovery, when both parties agreed not to file another Motion for Summary Judgment when the Court stated that it believed Afoluso's intent would need to be proven at trial.

## IV. THE COURT DID NOT ERR IN FINDING MS. BURLEY AND HER TESTIMONY CREDIBLE AND ADMITTING NOVARTIS' EXHIBIT 83 INTO EVIDENCE.

Appellants' arguments IV and V revolve around pure speculation that Novartis' witness may be lying without presenting any evidence to support their allegations.  The Court found Ms. Burley credible and due regard is to be given to the bankruptcy court's assessment of a witness's credibility.  Kool, 300 F.3d at 353.  During trial, Ms. Burley authenticated Exhibit 83, Novartis' Code of

Conduct.  (Appellants App., Vol.1, Ex. H, p.23:13-25:17; 30:12-31:2).  Appellants were provided ample opportunity to cross-examine Ms. Burley.  (Id. at p.46:15-58:22).  Nor did the Court discharge Ms. Burley early.  Rather, the Court allowed Ms. Burley to leave after Appellants finished with their cross-examination and Novartis' counsel stated redirect was not necessary. (Id. at 58:3-22, 60:22-61:2).

Appellants labor under the mistaken belief that any document presented as evidence in the bankruptcy trial, was required to have been included in the Motion for Summary Judgment in the District Court case.  However, there is no such rule.

"Items not before the Bankruptcy Court and not considered by it in rendering its decision may not be included in the record." In re Neshaminy Office Bldg. Associates, 62 B.R. at 802; (citing In re Candor Diamond Corp., 26 B.R. at 846-47).  The Codes of Conduct or Supplemental Codes of Conduct produced in the January 21, 2021 declaration of John McCusker (the "Declaration") were not admitted into evidence by the Bankruptcy Court or relied upon in forming its July 14, 2021 Opinion.  (Appellants App., Vol.1, C, p.35, n.23).  Therefore, the documents produced in the Declaration are not a part of the record on appeal and Appellants' arguments surrounding the documents in the Declaration are irrelevant to this appeal.  As best counsel can discern, it appears based upon the Declaration, that Appellants believe Exhibit 83 is a "sham document" made up of "four discrete documents" that were "merged into Exhibit 83."  As the Declaration was not part

of the bankruptcy record and Appellants' argument about Exhibit 83 stems from the declaration, those arguments should be stricken as they are based upon documents not in the record.   To the extent this Court substantively reviews Appellants' argument, it is necessary to briefly discuss the Declaration.

The Declaration contained five exhibits: the 2010 and 2012 Codes of Conduct, the 2011 US Supplement to the Code of Conduct and two copies of the 2012 US Supplement to the Code of Conduct.   Thus, the Declaration contains two different years of Codes of Conduct and two years of US Supplementals to the Code of Conduct.   Each exhibit is separate from the rest; they are not merged into one document or merged into Exhibit 83.   As far as Exhibit 83 being "hastily prepared," Appellants provide no evidence other than their own hollow assertations.   The Declaration and Exhibit 83 are not the same, clearly Exhibit 83 is one document and the Declaration contains five separate exhibits.   Appellants' statement that the Declaration was "rejected by the bankruptcy court, in part due to objections raised in Appellants Post trial brief" is false and directly at odds with the Bankruptcy Court's Trial Opinion, which states "…the Debtors post-trial brief is so confusing and rambling as to be virtually incomprehensible, and the Court genuinely does not understand on what other basis besides those expressed at trial the Debtors seek to have this document stricken."   (Appellant Brief, p.29 & Appellants App., Vol.1, C, p.31, n.20).

Appellants attempt to raise issues asserted in their post-trial brief in this appeal, without raising them in their Appellant Brief, instead, referring this Court to Appellants' post-trial brief.  (*See,* Appellant Brief, p.28, n.38.)  However, "when a party fails to properly brief an issue on appeal, that party is considered to have waived that issue."  In re Mazzocone, 1995 U.S. Dist. LEXIS 3218, at *9 (E.D. Pa. March 16, 1995).  Thus, Appellants have waived any arguments made in their post-trial brief that they did not also assert in their appellant brief.  Additionally, a party cannot raise an issue or argument in a brief by merely referring to an attached exhibit.  To do so would completely render brief page or word limits superfluous, as any party could add a multitude of additional arguments and issues beyond the confines of the page and word limit by simply attaching exhibits with additional arguments or issues.

Appellants' allegations that Novartis' counsel improperly authenticated documents in the Motion for Summary Judgment in the District Court case is irrelevant and baseless.  First, counsel's certification in the Motion for Summary Judgment in the District Court (the "Certification"), which Appellants include as Exhibit 2 in Volume 2 of their Appendix is not a part of the Bankruptcy Court record, and therefore should be stricken from this appeal.  The Certification was neither introduced into the record in the adversary proceeding nor produced at trial.  Nor was the Certification included in any docketed filing in this matter.  "Items not

before the Bankruptcy Court and not considered by it in rendering its decision may not be included in the record." In re Neshaminy Office Bldg. Associates, 62 B.R. at 802; (citing In re Candor Diamond Corp., 26 B.R. at 846-47). "The record on appeal should contain all items considered by the bankruptcy court in reaching a decision, [c]onversely if an item was not considered by the court, it should be stricken from the record on appeal." In re Moisuc, 2017 U.S. Dist. LEXIS 94023, at *27; (quoting NWL Holdings, Inc., 320 B.R. at 521-522). As such, the Certification cannot be considered and should be excluded from the record on appeal.

Second, any arguments surrounding the Certification are yet again an improper attempt to relitigate the District Court case in violation of the doctrine of collateral estoppel. Furthermore, Appellants had the opportunity to raise any issues surrounding the Certification during the District Court case. They failed to do so. "It is well established that arguments not raised before the District Court are waived on appeal." In re Tribune Media Co., 902 F.3d 384, 397 (3d Cir. 2018); (quoting DIRECTV Inc. v. Seijas, 508 F.3d 123, 125 n.1 (3d Cir. 2007)). Appellants never raised any issues regarding the Certification in their appeal and brief to the Third Circuit. "As a general matter, an appellant waives an argument in support of reversal if it is not raised in the opening brief." In re Asbestos Prods. Liab. Litig, 873 F.3d 232, 237 (3d Cir. 2017); (citing McCray v. Fidelity Nat'l

Title Ins. Co., 682 F3d 229, 241 (3d Cir. 2012)).  "[W]hen a party fails to properly brief an issue on appeal, that party is considered to have waived that issue."  In re Mazzocone, 1995 U.S. Dist. LEXIS 3218, at *9.  The District Court matter has concluded, and Appellants are barred from relitigating it pursuant to collateral estoppel.  Furthermore, the Certification can hardly be considered newly discovered evidence by the Appellants, as it was filed *over five years ago*, on February 12, 2016, in the District Court case.

Additionally, the Certification is completely irrelevant to any of the remaining issues the Bankruptcy Court set for trial or to any issues generally regarding dischargeability.  Finally, by the logic of Appellants' own arguments, their own "Certification of Adenekan Adesanya and Afoluso Adesanya" in this appeal is improper, since it was certified by the Appellants regarding documents of which they have no personal knowledge.

Novartis was not barred by the doctrine of collateral estoppel from producing Exhibit 83 at trial.  Part of the trial focused around Afoluso's intent at the time she failed to disclose her conflicts of interest and external employment.  As such, Exhibit 83, as the Code of Conduct, was utilized to establish that Afoluso was aware of such policies of Novartis at the time she failed to disclose her external employment to Novartis.  Thus, Exhibit 83 was not presented at trial to relitigate any findings of fact or conclusions of law of the District Court but rather

to establish that Afoluso was aware of such policies and thus knowingly created misleading impressions with the intent to deceive.

On page 28 of their brief, Appellants' paraphrase some of the Court's findings of fact. However, in doing so, they greatly altered the Bankruptcy Court's actual findings and ignored that, aside from Afoluso's "extensive experience working for other major pharmaceuticals companies which almost certainly would have had comprehensive conflicts of interest policies[,]" the Court also found Afoluso's testimony self-serving and not credible given "the overwhelming evidence that she read and understood the Employee Agreement and was trained on the Code of Conduct, both of which referenced the most salient aspects of the Conflicts Policy and prohibition on obtaining certain outside employment, prior to 2013." (Appellants App., Vol.1, C, p.32, n.21). Appellants state footnote 38 is contrary to and conflicts with the evidence but fail to point to or provide any evidence that is contrary or conflicting. Appellants have the burden of proving such a finding was clearly erroneous and have failed to do so, as they have provided no more than vague speculation and conjecture in support of their arguments.

**V.    THE BANKRUPTCY COURT DID NOT ERR IN APPLYING THE DOCTRINE OF COLLATERAL ESTOPPEL TO THE FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE DISTRICT COURT, AS THE EVIDENCE NOVARTIS INTRODUCED AT TRIAL WAS FOR THE PURPOSES OF PROVING AFOLUSO'S INTENT OR ILLUSTRATING HER LACK OF CREDIBILITY.**

Appellants raise this issue in their "Statement of Issues" but fail to address this issue in their Argument section.  "Where an appellant presents an issue in his statement of issues raised on appeal, but not in the argument section of his brief, he has abandoned and waived that issue on appeal."  Mitchell v Cellone, 389 F.3d 86, 92 (3d Cir. 2004); (citing Travitz v. Northeast Dep't ILGWU Health & Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994)).

Even if this Court were to find the issue not waived, the doctrine of collateral estoppel was correctly applied by the Bankruptcy Court.  "The doctrine of collateral estoppel prevents parties from relitigating an issue when a court of competent jurisdiction had already adjudicated the issues on its merits, and a final judgment has been entered as to those parties and their privies."  In re Wurster, 1999 U.S. Dist. LEXIS 12218, at *9 (E.D. Pa. Aug. 10, 1999); (citing Schroeder v. Acceleration Life Ins. Co., 972 F.2d 41, 45 (3d Cir. 1992)).  As the issues decided in the District Court case are the same as those presented in the Bankruptcy Court, there was a final judgment on the merits in the District Court case, the Adesanyas were a party in the District Court case, and the Adesanyas had a full and fair opportunity to litigate the issues in the District Court case, collateral estoppel was properly applied by the Bankruptcy Court. The evidence Novartis introduced at trial was for purposes of proving Afoluso's intent and demonstrating her lack of

credibility, not to relitigate any findings of fact and conclusions of law of the District Court.  (Appellants App., Vol.1, H, p.102:22-103:10, 118:25-120:8).

## VI.    THE BANKRUPTCY COURT CORRECTLY HELD THAT THE PORTION OF THE DISTRICT COURT JUDGMENT ATTRIBUTABLE TO AFOLUSO'S FRAUD ON HER EMPLOYMENT APPLICATION AND RESUME IS NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(A)(2)(B).

For a debt to be rendered nondischargeable under 11 U.S.C. § 523(a)(2)(B), the creditor must have reasonably relied upon a materially false written statement respecting a debtor's financial condition.  Appellants appear to contend that the Bankruptcy Court applied the incorrect standard for Novartis' reliance, applying a justifiable reliance standard instead of a reasonable reliance standard.  This is simply not true; the Bankruptcy Court applied a reasonable reliance standard. (*See*, Appellants App., Vol.1, C, p.21-25).  Appellants cite a number of cases from other circuits and states, none of which are precedential or binding upon this Court. Even if cases cited by Appellants were precedential or binding, they add nothing new to the Bankruptcy Court's reasonable reliance analysis, as the Bankruptcy Court already addressed such issues as "red flags," the background check Novartis performed, and how Afoluso's use of the term "Target 30%" on her job application would not have alerted Novartis to all the other misrepresentations throughout Afoluso's job application.  (Id. at 24, n.11).  Appellants have offered no evidence

that such findings by the Bankruptcy Court are clearly erroneous. The arguments Appellants offer are another impermissible relitigation of the District Court case.

On page 33 of their brief, Appellants dispute some specific findings of fact of the Bankruptcy Court. However, Appellants have failed to demonstrate that any finding of fact was clearly erroneous. The Court stated "[t]here is no basis to conclude that Novartis veered from its standard practices in having that background check performed or that not contacting the current employer was not part of Novartis's standard practice." (Id.). The Court also explained that "although Afoluso's inclusion of "'Target 30%'"…may have been odd, that single reference alone would not have alerted Novartis to the multiple misrepresentations throughout her application…" (Id.). None of Appellants' arguments establish that the bankruptcy court's findings of fact were completely devoid of minimum evidentiary support displaying some hue of credibility or bore no rational relationship to the evidence to render them clearly erroneous, especially when due regard is given to the Bankruptcy Court's ability to assess first-hand the credibility of Afoluso. Bayer, 558 B.R. at 730; Kool, 300 F.3d at 353. The Bankruptcy Court found Afoluso:

> severely lacking in credibility as witness [as she] appeared to receive coaching from Adenekan as he whispered to Afoluso during her testimony multiple times…[and] even when not being coached, Afoluso came across as evasive, argumentative, and defensive. She repeatedly refused to answer Novartis's questions

until admonished by the Court to do so, and, even then, claimed lack of recall for substantially all of Novartis's questions, behavior consistent with her conduct during discovery in the District Court…Overall, her testimony was incredibly self-serving, and, at times, even contradictory.  She even admitted that certain discovery responses she had given in the District Court Action were not true.  (Appellants App., Vol.1, C, p.18).

**VII.  THE BANKRUPTCY COURT DID NOT ERR IN HOLDING THE PORTION OF THE DISTRICT COURT JUDGMENT ATTRIBUTABLE TO AFOLUSO'S BREACH OF THE RELOCATION AGREEMENT NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(A)(2)(A), AS APPELLANTS FAILED TO OFFER ANY CREDIBLE EVIDENCE THAT AFOLUSO INTENDED TO RELOCATE.**

Appellants present two new arguments in their brief which they never raised or addressed at trial: (1) that Novartis was to refer real estate brokers to Afoluso and (2) that Novartis knew Afoluso never relocated but chose not to do anything because Novartis benefitted from this arrangement.  "To preserve a matter for appellate review, a party "must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.'"" Garza v. Citigroup Inc., 881 F.3d 277, 284 (3d Cir 2018); (citing Shell Petroleum, Inc. v. United States, 182 F.3d 212, 218 (3d Cir. 1999)).  Appellants never once during trial raised these issues and, as such, they are waived.

Even if this Court were to find these issues not waived, Appellants' apparent argument that Novartis was to refer real estate brokers to Afoluso had no relation

to any of the remaining issues at trial.  The only elements left to prove at trial were whether Afoluso knew her representation that she would relocate was false when she made it, whether she made the representation with intent to deceive Novartis, and whether Novartis' reliance about her representation was justifiable. (Appellants App., Vol.1, E, p.31).  Whether or not Novartis provided referrals to real estate brokers, would not tend to prove or disprove any of those remaining elements.  Novartis' referral of real estate brokers would have occurred *after* Afoluso made her representations that she would relocate, and thus, have no relevance to whether Afoluso knew her misrepresentation was false when she made it with intent to deceive.  Furthermore, Appellants focus on this one minuscule item regarding real estate broker referrals, overlooks the overwhelming flood of evidence the Bankruptcy Court found in support of its decision that Afoluso knew her representation that she would relocate was made with intent to deceive Novartis and was false when she made it and that Novartis was justified in relying on Afoluso's representation.

The evidence and testimony at trial support the Bankruptcy Court's findings. At trial, Afoluso testified that she could not recollect looking into schools for her children in New Jersey (Appellants App., Vol.1, H, p.74:2-76:3).  She could not remember researching any towns or cities in New Jersey to relocate to. (Id. at 76:4-76:9).  Nor did she remember ever traveling to New Jersey to look at towns or

cities for relocation purposes.  (Id. at 76:19-77:7).  Afoluso could not remember meeting with or entering into a contract with a realtor to look for a home in New Jersey.  (Id. at 77:8-77:12). Afoluso testified she could not recall or remember asking Novartis' relocation vendor to help her find a realtor.  (Id. at 77:13-78:4). She testified she never entered into a contract to sell her home in Pennsylvania or even obtained the assistance of a realtor to determine a selling price for the Pennsylvania home.   (Id. at 78:8-79:23).   Additionally, in her responses to Novartis' discovery requests, Afoluso admitted there were no listing agreements or offers to purchase the Pennsylvania home and she never contacted a realtor to sell or lease the Pennsylvania home. (Novartis App. Ex. 25, p.718 & 721).   Her responses to discovery further revealed she never placed an offer to purchase or lease a property in New Jersey.  (Novartis App. Ex. 25, p.718 & 721).  Afoluso testified when a year passed and she still had not relocated, she never informed anyone at Novartis that she needed additional time to relocate to New Jersey. (Appellants App., Vol.1, H, 143:9-146:3).  At trial, Afoluso admitted she kept the approximately $26,000.00 of relocation money, despite never actually relocating. (Id. at 68:18-69:1; 146:4-11).   Nor could she remember what she spent the $26,000.00 on (Id. at 146:4-11).

Afoluso was in dire financial straits prior to applying to work at Novartis and throughout her tenure at Novartis.  Prior to seeking employment with Novartis,

three investment properties of the Adesanyas each had a mortgage in default, with the property in Perkasie and the property in Norristown already in foreclosure. (Novartis App., Ex. 8, p.526-527, Ex. 14-16 & 20).   On March 1, 2010, the very same day Afoluso was offered a position at Novartis and only two days before she signed the relocation agreement, Appellants missed the mortgage payment due on their residence.   (Novartis App., Ex. 10, 11, & 23).    Such financial difficulties illustrate a motive for Afoluso to deceive Novartis about her intention to relocate in order to obtain as much relocation money as possible.   Although, the District Court had already found Afoluso's "employment was also predicated on her relocation from her home in Pennsylvania to a location closer to the Novartis offices in Florham Park, New Jersey," Novartis also produced at trial the job posting that Afoluso responded to, stating that the job location was in East Hanover, New Jersey and the Offer Letter Novartis sent to Afoluso which provided that Novartis would help Afoluso relocate if she accepted the employment.   (Appellants App., Vol.1, G1, p.4, Novartis App., Ex. 9 & 10).

Appellants' brief fails to establish in the force of overwhelming evidence, that the Bankruptcy Court's findings of fact were clearly erroneous.   As detailed above the court's findings of fact are each supported by testimonial and documentary evidence presented at trial.   Appellants have failed to demonstrate

that any finding of fact was completely devoid of minimum evidentiary support displaying some hue of credibility or bore no rational relationship to the evidence.

The suggestion that Novartis knew of Afoluso's failure to relocate but chose to ignore it because it somehow benefitted Novartis, is absurd given the District Court's findings that Afoluso's "limited time in the office was negatively affecting her team" and that she was ultimately terminated from her position due to "performance based [reasons], predominately driven about not coming into the office there days a week, which impacted her interaction and collaboration with her close functional team members" when her "employment was also predicated on her relocation from her home in Pennsylvania to a location closer to the Novartis offices in Florham Park, New Jersey." (Appellants App., Vol.1, Ex. G1, p.4-5). Additionally, it hardly benefitted Novartis, when Afoluso "accepted $26,000.00 in relocation funds, told [Novartis] she intended to relocate, but did not do so." (Id.). Appellants attempt, yet again, to relitigate the District Court case. Moreover, Appellants' argument is nothing more than a conclusory statement without any evidence to support it, as they have provided zero documentary or testimonial evidence.

Appellants' argument contains some questions they want asked of Novartis. However, Appellants overlook the fact they had the opportunity to ask these questions of Ms. Burley during cross-examination but failed to do so. Again,

Appellants claim they would have addressed certain issues had Ms. Burley not been "discharged early by the court." Yet, Ms. Burley was not discharged early. Instead, she was dismissed after Appellants finished with their cross-examination and Novartis' counsel stated redirect was not necessary. (Appellants App., Vol.1., H p.58:3-60:7). Alternatively, Appellants could have asked such questions of Afoluso, but they failed to do so at trial.

Finally, Exhibit 12 in Volume 2 of Appellants' Appendix ("Exhibit 12") was never introduced into the record in the adversary proceeding and it was not produced at trial by either party. Nor was it included in the docket or any of the pleadings. Thus, Exhibit 12 must be excluded from the record on appeal[6]. Furthermore, Appellants cannot claim Exhibit 12 is "newly discovered" evidence, as it was produced during discovery in the District Court Case. Appellants, as has been the norm, continue to attempt to relitigate the District Court case. The inclusion of Exhibit 12 within Appellants' Appendix is nothing more than a continuation of this trend.

## VIII. THE BANKRUPTCY COURT DID NOT ERR IN HOLDING THE PORTION OF THE DISTRICT COURT JUDGMENT ATTRIBUTABLE TO AFOLUSO'S BREACH OF HER DUTY OF LOYALTY AND CONFLICTS POLICY NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(A)(2)(A), AS THE BANKRUPTCY'S COURT'S FINDINGS OF FACT ARE NOT CLEARLY ERRONEOUS.

---

[6] This Court has already noted at ECF#11, that this Exhibit is not part of the bankruptcy record.

Appellants' arguments are flawed and fail to establish that the Bankruptcy Court's findings of fact are clearly erroneous. Appellants' first argument that "Afoluso's yearly employment performance evaluations never showed any concerns of adverse effect on Afoluso's work throughout her tenure with Novartis[]" is nothing more than another impermissible attempt to relitigate the District Court case in violation of the doctrine of collateral estoppel. (Appellant's Brief, p.37). Further, Appellants conveniently overlook the fact that Afoluso's performance reviews never included any concerns regarding the adverse effect her outside employment with competing companies had because ***she never disclosed her outside employment to Novartis***. (*See*, Appellants App. Vol.1, G1, p.4 "[Afoluso] did not disclose her outside activities or income to Novartis."). It would have been impossible for Novartis to include such statements in Afoluso's performance reviews as Novartis was unaware of her external employment until after she was terminated. (Id.).

Appellants then attempt to argue that Afoluso only worked for Novartis 40 hours a week and thus was free to do whatever she wanted in her free time, including, apparently, work for competing companies. Again, Appellants are relitigating the District Court case. The District Court already found:

- The Employment Agreement and Conflict of Interest Policy precluded Afoluso from holding outside employment that would interfere with her obligations to Novartis (Appellants App., Vol.1, G1, p.3).

- By agreeing to the Employment Agreement, Afoluso represented to Novartis that she would devote her best efforts and full business loyalty to Novartis and that she would not engage in any other business which would adversely affect her ability to perform her job for Novartis.  (Id.).

- The Conflicts Policy to which Afoluso agreed to abide by prohibited employees from holding second jobs or providing services to competitors and engaging in any outside employment or other activity which would encroach on the time and attention that needed to be devoted to Novartis's affairs.  (Id.).

- Afoluso was in violation of these policies from the very start of her employment.  (Id. at p.3, 20, 22, 23).

- Afoluso did not disclose to Novartis that at the time of her hire and continuing through her tenure with Novartis she and Adenekan jointly owned Global Drug, also known as LaRon Pharma, Inc. ("LaRon"). (Id. p.3).

46

- Afoluso made the representations concerning her relationship to Global Drug/LaRon knowing them to be false, with the intent to deceive and fraudulently induce Novartis to rely on them by offering her employment. (Id. p.3 & 19).

- LaRon was a sub-S corporation that collaborated with other pharmaceutical businesses to develop marketing of their products. (Id. at p.3).

- Afoluso owned 50% of LaRon. (Id.).

- After becoming employed by Novartis, Afoluso sought and entered into at least two outside consulting positions in the pharmaceutical industry. (Id. at p.4, 20).

- Afoluso accepted a position with Biomedical Consulting International, Inc. ("Biomedical") and provided drug safety services to Auxilium Pharmaceuticals ("Auxilium"), direct competitors of Novartis. (Id.).

- From January 2012 through February 2013, Afoluso used the alias "Ron Nuga, MD" to provide drug safety services to Astellas Pharma Global Development, Inc., working approximately forty hours per week, and travelling to their headquarters on at least five occasions. (Id. at p.4).

- Afoluso failed to disclose these outside activities or income to Novartis. (<u>Id</u>.).

Although Afoluso was able to do any number of activities in her free time, pursuant to her Employment Agreement and Novartis' Conflict of Interest Policy, she could not, in her free time, work for Novartis' competitors.

Whether the Bankruptcy Court found that Afoluso held external employment throughout her tenure with Novartis or whether it found she held external employment for two (2) months of her employment with Novartis, has no bearing on the issue of dischargeability for her breach of her duty of loyalty and breach of Novartis's Conflicts of Interest Policy. The length of the external employment is irrelevant; what matters is that there *was* external employment, and thus a breach of Novartis' Code of Conflicts Policy. In other words, the breach is what matters, the length of the breach is irrelevant. Therefore, Appellants' other argument that Afoluso had no external employment in 2013 is irrelevant, as well as factually untrue. Since Afoluso clearly held external employment in prior years she breached her duty of loyalty and the Novartis Conflicts Policy. Moreover, Afoluso was working for Astellas until February of 2013; thus, she was engaged in external employment in 2013. (<u>Id</u>.). Furthermore, Appellants are incorrect when they state, "the issues with External employment started from 2012 onward". The Bankruptcy Court pursuant to collateral estoppel adopted the District Court's

finding that "[i]n August 2011, unbeknownst to Novartis, Afoluso obtained a position as a drug safety consultant with Biomedical Consulting International, Inc. (Appellants App., Vol.1, C, p.6).

Appellants then argue that the Bankruptcy Court ignores that Afoluso did not train on the Code of Conduct until 2012 and conflict of interest training until July 2013.  However, the Bankruptcy Court did not ignore this but rather stated "…on January 27, 2012, Afoluso completed the 2011 Code of Conduct training for no-sales associates." (Id. at 7).  Furthermore, the Bankruptcy Court acknowledged that prior to her January 27, 2012 Code of Conduct training, Afoluso had signed both an Offer Letter and Employment Agreement.  The Offer Letter stated "I acknowledge that I have received and read copies of the Novartis Pharmaceuticals Corporation Code of Conduct…I understand the obligations that these policies place upon me, and have had any questions answered to my satisfaction.  I understand that compliance with these policies, including the obligation to report any violations, is a conduct of my employment with the Company." (Id. at 5 & Novartis App., Ex. 12).  Afoluso's Employee Agreement stated "During my employment by Novartis, I will devote my best efforts and full business loyalty to my employment with Novartis.  I will comply with its policies and practices, including, without limitation, the Code of Conduct…I acknowledge that I have received copies of the Novartis Code of Conduct…and that I have read these

policies prior to executing this agreement.  I will hold no other employment or engage in any other business which may adversely affect my ability to perform my job responsibilities at Novartis."  (Appellants App., Vol.1, C, p.5).  Thus, the Bankruptcy Court was able to find that Afoluso:

> was aware from the very outset of her employment that she was prohibited from holding external employment of that nature.  Despite this awareness, she still obtained and held external employment with other pharmaceutical companies throughout her tenure with Novartis without informing Novartis, for whom she was supposed to be working full time.  (Id. at 31).

Also, the District Court already held "[Afoluso] was in violation of [the Employment Agreement and Conflict of Interest Policy] from the very start of her employment."  (Id. at 3).   Moreover, Afoluso admitted that she trained on the Code of Conduct in 2011, 2012 and 2013.  (Appellants App., Vol.1, H, 124:12-125:20).

As discussed above in Section IV, Appellants' argument that Exhibit 83 is "perjurious" is blatantly false.  Exhibit 83 was properly authenticated during trial by Ms. Burley.   Thus, it was not a "prejudicial error" to admit Exhibit 83. Appellants have failed to demonstrate that the Bankruptcy Court's findings of fact with regard to Exhibit 83 are clearly erroneous or that the Bankruptcy Court improperly admitted Exhibit 83 into evidence.  Novartis incorporates its arguments from Section IV herein.

**IX.    THE BANKRUPTCY COURT DID NOT ERR IN HOLDING THE MAJORITY OF THE DISTRICT COURT JUDGMENT ATTRIBUTABLE TO AFOLUSO'S BREACH OF THE ANNUAL INCENTIVE PROGRAM NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(A)(2)(A), AS THE BANKRUPTCY'S COURT'S FINDINGS OF FACT ARE NOT CLEARLY ERRONEOUS.**

Appellants continue to raise the same arguments surrounding Exhibit 83 as they have raised throughout their brief.  Thus, Novartis refers to its arguments in Section IV above and incorporates those arguments herein.

**X.    THE BANKRUPTCY COURT DID NOT ERR IN HOLDING THE JUDGMENT ATTRIBUTABLE TO THE SANCTIONS AGAINST AFOLUSO NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(A)(6), SINCE AFOLUSO ACTED WILLFULLY AND MALICIOUSLY WHEN SHE COMMITTED PERJURY AND SUBMITTED FALSE DISCOVERY RESPONSES.**

Appellants state "[t]he Bankruptcy Court made this ruling on the basis of its conclusions in the earlier sections of A-D in this argument, which Appellants are confident will be reversed by this Court, therefore rendering this award MOOT." Appellants use letters to section off their brief multiple times, which creates some confusion as to what prior arguments A-D in their brief they are actually referring to.  To the best of counsel's understanding, Appellants refer to the prior arguments made regarding the Bankruptcy Court's determination of nondischargeability of the judgments.  However, in an abundance of caution, Novartis will consider any arguments Appellants refer to previously in their brief as being part of the "conclusions in the earlier sections A-D."

None of the prior arguments Appellants make have any relation whatsoever to the judgment attributable to the sanctions judgment against Afoluso.  Appellants provide no reasons, evidence, or arguments as to why the judgment against Afoluso should be reversed or in Appellants' terms rendered "moot." "As a general matter, an appellant waives an argument in support of reversal if it is not raised in the opening brief."  In re Asbestos Prods. Liab. Litig, 873 F.3d at 237; (citing McCray, 682 F3.d at 241).  Appellants by failing to assert any arguments in this section have waived them.

To the extent Appellants are attempting to assert continuing arguments about Exhibit 83, Novartis refers to its arguments in Section IV above and incorporates those arguments herein.  As discussed in Section IV, Exhibit 83 was properly authenticated and admitted.   Moreover, Exhibit 83 has zero relation to the judgment for sanctions against Afoluso, as the Code of Conduct bore no relation to Afoluso being sanctioned for perjury and providing false and misleading answers during discovery and at her depositions.

Appellants reference $54,000.00 that was dischargeable from "Section D". Section D of Appellants brief appears to be arguments against nondischargeability for the portion of the judgment attributable to Afoluso's breach of the Annual Incentive Plan, but the amount that was rendered dischargeable for that portion of the judgment was $57,605.00.  Thus, Novartis is unclear as to what the $54,000.00

refers to and to the best Novartis' counsel can understand, Appellants' argument about $54,000.00 is another impermissible attempt to relitigate the District Court in direct violation of the doctrine of collateral estoppel.

## XI. THE BANKRUPTCY COURT DID NOT ERR IN HOLDING THE JUDGMENT ATTRIBUTABLE TO THE SANCTIONS AGAINST ADENEKAN NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(A)(6), AS ADENEKAN ACTED WILLFULLY AND MALICIOUSLY WHEN HE REFUSED TO PRODUCE DOCUMENTS AND LIED DURING HIS DEPOSITION.

Almost the entirety of Appellants' argument in this section consists of attempts to relitigate the District Court case in contravention of the doctrine of collateral estoppel. Despite being told multiple times at hearings, during trial, and in the Bankruptcy Court's March 24, 2020 Opinion that Appellants cannot relitigate findings of fact and conclusions of law from the District Court, Appellants relentlessly continue in their pursuit to do so. The District Court explicitly found that "[w]hen asked for relevant documents regarding LaRon or Ron Nuga LLC, Mr. Adesanya certified that he and his wife did not possess any, even though there were thousands located in their home." (Appellants App., Vol.1, G1, p.7, n.11). Appellants can no longer relitigate this finding of fact.

Appellants state Adenekan did not willfully obstruct Novartis, who got all the documents required in the case anyway. Aside from impermissibly relitigating the District Court case again, this statement is not true. The District Court held that at the time it granted Novartis' Motion for Summary Judgment, sanctioned

Adenekan, and sanctioned Afoluso by dismissing her claims, Adenekan still had not complied with Novartis' document demands.  (Id. at, p.7).  Any purported reasons Adenekan offers for his refusal to provide the documents are irrelevant as the District Court findings of fact and conclusions of law cannot be relitigated and the Bankruptcy Court was bound by them.

Appellants next argue that during the District Court case Novartis' counsel had ex parte communications with the Court.  This issue was already appealed to the Third Circuit with the Third Circuit finding in Novartis' favor and affirming the District Court's judgment.  The Third Circuit held "[t]he Magistrate Judge and [Novartis'] counsel were simply seeking a way to mange the numerous pro se discovery requests [the Adesanyas] had filed" and that the Adesanyas had "not shown that they were prejudiced by any alleged ex parte communications." (Novartis App., Ex.27, p.739-740).  The Third Circuit stated "[a] judge may permit ex parte communication for scheduling or administrative purposes if the communication does not address substantive matters and not party would gain an advantage."  (Novartis App., Ex.27, p.739).  Moreover, the Third Circuit also held "[e]x parte communications are tolerated of necessity, however, where related to non-merits issues, for administrative matters, and in emergency circumstances." (Novartis App., Ex.27, p.739).

Furthermore, Appellants reliance on Exhibits 13 and 15 of Volume 2 of their Appendix is improper as such documents were not part of the Bankruptcy Court record and should be stricken.  Neither document was produced at trial or utilized by the Bankruptcy Court in rendering its July 14, 2020 Opinion.

Finally, Appellants attempt to argue, yet again, that the entire District Court findings of fact and conclusions of law of the District Court should be overturned or overlooked because Novartis' counsel in the District Court submitted a Certification in Support of its Motion for Sanctions and Summary Judgment.  As this is yet another reiteration of the Appellants' fourth and fifth arguments, Novartis hereby incorporates by reference its earlier arguments on those issues, as discussed in Section IV.

**XII. THE BANKRUPTCY COURT PROPERLY DENIED APPELLANTS' MOTION TO STAY ORDER OF JULY 14, 2021 AND TO CONTINUE ADVERSARY CASE 19-124 AND BANKRUPTCY CASE 18-17260 ("MOTION TO STAY") AS THEY FAILED TO MEET THE STANDARD REQUIRED FOR A STAY.**

Despite Appellants' Notice of Appeal stating the appeal was from the Bankruptcy Court's July 14, 2021 Order, Appellants apparently are also appealing the Bankruptcy Court's September 15, 2021 Order.  This issue is not included within their Statement of Issues on Appeal.

Appellants mischaracterize Novartis' choice to not contest the Motion to Stay.  Novartis chose not to file a response to Appellants' Motion to Stay because

it was not contesting the Motion to Stay.  Contrary to Appellants' contention, simply because a motion is uncontested does not automatically guarantee that a motion will be granted.  Nor does Local Bankruptcy Rule 9014-3(k) provide that an uncontested motion automatically is granted.  Appellants cite to Local Rule 7.1(c) of the Eastern District of Pennsylvania, which is inapplicable as the Motion to Stay was filed in the Bankruptcy Court.

The Motion to Stay included a request to "continue" both the adversary and bankruptcy case.  Appellants utilize the word "continue" to argue that Judge Chan did not follow her own procedures for "continuances."  However, Judge Chan's continuance procedures are for continuance of hearings or arguments on matters listed on the court's schedule, not for a "continuation" of a case.  Nor can a case even be "continued."  Additionally, Judge Chan's procedures are not a part of the bankruptcy record.

Appellants argue they were forced to file the Motion to Stay in the Bankruptcy Court.  However, pursuant to Fed. R. Bankr. 8007(b)(1) & (2), Appellants could have filed the Motion to Stay "in the court where the appeal is pending" provided they "show that moving first in the bankruptcy court would be impracticable."  Appellants' argument that they could have filed a motion for reconsideration but chose not to because it would be "prejudicial" to them to do so, is meritless.  It would not be prejudicial for Appellants to have the Bankruptcy

Court decide a motion for reconsideration.  The District Court cannot overrule the Bankruptcy Court just because the Appellants now feel in retrospect that they should have filed a motion for reconsideration.  Appellants did not file a motion for reconsideration within fourteen (14) after the entry of judgment and have thus waived their right to do so.  Fed. R. Bankr. 9023.  "A motion for reconsideration is governed by Federal Rule of Civil Procedure 59(e) which is applicable in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9023." In re Norley, 2002 Bankr. LEXIS 743, at * 2 (E.D. Pa. Bk. June 24, 2002).

The Bankruptcy Court in its September 15, 2021 order clearly detailed that it denied Appellants' Motion to Stay as Appellants failed to meet the first two prongs of the four-factor test to determine whether a motion to stay a judgment or order should be granted.  (Appellants App., Vol.1, D, p.3-5).  Appellants failed to meet the first factor requiring Appellants to show a strong likelihood of success on the merits of the appeal, as Appellants failed to even mention any of the factors, let alone explain how Appellants had a strong likelihood of success on appeal.  (Id.).  As Appellants failed to even indicate the second factor requiring Appellants to demonstrate they will suffer irreparable injury absent a stay, let alone, discuss how they would be irreparably injured absent a stay, Appellants did not meet the second factor of the four-prong test.  (Id.).  As the two most important factors of the four-prong test are the first two factors and Appellants failed to meet those factors, an

analysis of the remaining two factors was not necessary.  (Id. at 4-5).  Therefore, the Bankruptcy Court properly denied the Motion to Stay.

### XIII.  THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA CANNOT OVERTURN THE ORDERS AND OPINIONS OF THE DISTRICT COURT CASE.

There was no editorial review and approval of court orders in the District Court case.  To the extent this was already raised by Appellants in their appeal to the Third Circuit, the Third Circuit held any ex parte communications were merely the "Magistrate Judge and [Novartis'] counsel…simply seeking a way to manage the numerous pro se discovery requests." (Novartis App., Ex.27, p.739).  If the issue was not raised in Appellants' appeal it the Third Circuit, it was waived by Appellants, and cannot now be asserted in this appeal.

All of the remaining arguments Appellants raise as reasons for overturning the District Court case have been previously addressed by Novartis earlier in this brief.  *See* Section IV above, for a discussion regarding "illegal certifications." None of the certifications were illegal, nor was there anything improper about their submission.  Section III, above, discusses Appellants' absurd notion that counsel for Novartis purchased the judgment from Novartis and is concealing it.  For a discussion of the authenticity of Exhibit 83, see Section IV above.  As detailed in Section IV above, none of the certifications and documents submitted in Novartis' post-trial declarations were "illegal."  Furthermore, this entire issue is irrelevant as

the Bankruptcy Court did not admit into evidence or rely upon the documents in the Declaration, when formulating its July 14, 2021 Opinion.  (Appellants App., Vol.1, C, p.35, n.23).  Novartis has not fabricated any evidence and this Court does not have the power to overturn the District Court case which was already affirmed on appeal to the Third Circuit.  This current appeal is from the Bankruptcy Court's Order holding the majority of the judgment against Appellants' nondischargeable, not the underlying the District Court case from which Appellants' judgment stems. Appellants' arguments are just another attempt to relitigate the District Court action in violation of the doctrine of collateral estoppel.

## CONCLUSION

Appellants have presented no valid reasons to overturn the Bankruptcy Court's July 14, 2021 and September 15, 2021 orders.  Appellants have failed to demonstrate that any of the Bankruptcy Court's findings of fact are clearly erroneous.  The Bankruptcy Court properly reset the deadline for filing a complaint objecting to discharge when Appellants' Chapter 13 was converted to Chapter 7.  Novartis proved through testimony and admissible evidence that the majority of Appellants' debts are nondischargeable.  Due to the doctrine of collateral estoppel, Appellants' attempts to relitigate the District Court case fail.  The Bankruptcy Court properly denied Appellants' Motion to Stay.  As such, the Bankruptcy Court's July 14, 2021 and September 15, 2021 Orders should be affirmed.

Respectfully submitted,

**HLADIK, ONORATO & FEDERMAN, LLP**

Date:  November 24, 2021

/s/ Pamela Cunningham

Stephen M. Hladik, Esq.
Pamela Cunningham, Esq.
298 Wissahickon Avenue
North Wales, PA 19454
267-662-9022
(F) 215-855-9121
shladik@hoflawgroup.com
pcunningham@hoflawgroup.com

60

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Novartis Pharmaceuticals Corporation hereby certifies that its Appellee Brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure No. 8015(a)(7)(B)(i), as the Appellee Brief does not exceed 13,000 words.  The Appellee Brief contains 13,000 words.


Date:  November 24, 2021          _/s/ Pamela Cunningham_
                                 Stephen M. Hladik, Esq.
                                 Pamela Cunningham, Esq.
                                 298 Wissahickon Avenue
                                 North Wales, PA  19454
                                 267-662-9022
                                 (F) 215-855-9121
                                 shladik@hoflawgroup.com
                                 pcunningham@hoflawgroup.com